# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39402**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Dustin C. ROTTINGHAUS**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 15 May 2019

————————————

*Military Judge:* J. Wesley Moore.

*Approved sentence:* Dishonorable discharge, confinement for 40 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 30 October 2017 by GCM convened at Pope Army Airfield, Fort Bragg, North Carolina.

*For Appellant:* Lieutenant Colonel Anthony D. Ortiz, USAF; Major Todd M. Swensen, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, DENNIS, and LEWIS, *Appellate Military Judges*.

Judge LEWIS delivered the opinion of the court, in which Senior Judge JOHNSON and Judge DENNIS joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

LEWIS, Judge:

A military judge convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA), of three specifications of sexual

assault of a child, on divers occasions, in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b.[1] The military judge sentenced Appellant to a dishonorable discharge, five years of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved only so much of the sentence as included a dishonorable discharge, 40 months of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1.[2] The convening authority also suspended the forfeiture of all pay and allowances for six months from the date of action and waived mandatory forfeitures for a period of six months for the benefit of Appellant's spouse and dependent child.

Appellant raises two issues on appeal: (1) whether the military judge erred by not admitting two defense sentencing exhibits; and (2) whether errors in the staff judge advocate's recommendation (SJAR) and addendum to the SJAR warrant new post-trial processing. We find no error that warrants relief, and we affirm the findings and sentence.

## I. BACKGROUND

In November 2015, Appellant lived with his wife, Staff Sergeant (SSgt) JR, and TW, his wife's 15-year-old sister by adoption. From November 2015 to late September 2016, Appellant penetrated TW's mouth, vulva, and anus with his penis while she was 15 years old. During this timeframe, Appellant estimated he engaged in sexual activity with TW about 20 times total with most occasions involving "oral sex, or sexual intercourse, or both." Appellant engaged in anal sodomy with TW during this timeframe "occasionally." Appellant's sexual activities with TW were discovered in the early morning hours of 20 November 2016 when SSgt JR walked into the living room and saw Appellant receiving oral sex from TW, who was then 16 years old. Appellant's wife called the local police that day and two days later met with agents from the Air Force Office of Special Investigations (AFOSI). AFOSI initiated an investigation and interviewed Appellant after a rights advisement. Appellant eventually admitted the sexual activities with TW detailed above.

---

[1] Pursuant to the PTA, the convening authority withdrew and dismissed one specification of sexual abuse of a child in violation of Article 120b, UCMJ, and one charge and specification of assault consummated by a battery on a child in violation of Article 128, UCMJ, 10 U.S.C. § 928.

[2] At Appellant's request, the convening authority deferred the effective date of the reduction in grade to E-1 until action.

## II. DISCUSSION

### A. Defense Sentencing Exhibits

#### 1. Additional Background

The Prosecution called SSgt JR to testify during sentencing about the impact of Appellant's crimes on her and her family. During cross-examination of SSgt JR, trial defense counsel attempted to elicit evidence of "a pre-existing condition" of TW. The military judge permitted SSgt JR to testify about various times TW acted out and some of the circumstances explaining why TW came to live with SSgt JR and Appellant. The military judge sustained a Prosecution objection to a portion of SSgt JR's testimony related to one instance when TW acted out in a violent manner. Prior to ruling, the military judge questioned trial defense counsel about "how much character assassination we engage in, and for what purpose?" In ruling on the objection, the military judge found the proposed testimony, *inter alia*, "cumulative of what [Appellant] already told me in the *Care*[3] inquiry" under Mil. R. Evid. 403[4] and excluded that portion of the testimony.

In addition to cross-examining SSgt JR about TW acting out, trial defense counsel offered into evidence two sentencing exhibits (Defense Exhibits A and B for identification), which he described as "a pair of psychological studies" from the Defense's "government provided psychologist." Defense Exhibit A for identification is a three-page handout titled "Oppositional Defiant Disorder (ODD) versus Conduct Disorder." Defense Exhibit B for identification is an article titled "Sexual Behaviors in Children: Evaluation and Management."[5] The Prosecution objected to both exhibits on multiple grounds, including lack of relevance. The military judge permitted both parties to develop their respective positions on the record prior to ruling. The military judge queried trial defense counsel on whether he was attempting to have the military judge "make a diagnosis" of TW and whether the defense exhibits were from "peer reviewed" publications. At the time of the military judge's ruling, the rules of

---

[3] *See United States v. Care*, 40 C.M.R 247 (C.M.A. 1969).

[4] This reference and all other references to the Military Rules of Evidence and the Rules for Courts-Martial in this opinion are to the 2016 edition of the Manual for Courts-Martial, which applied during Appellant's trial and clemency. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM),* pt. II, III.

[5] The article lists its author as Nancy D. Kellogg, M.D., appeared in the publication *American Family Physician*, volume 82, number 10, pages 1,233–38 (15 Nov. 2010), and was downloaded from the American Family Physician website at http://www.aafp.org/afp.

evidence were not relaxed under Rule for Courts-Martial (R.C.M.) 1001(c)(3). The military judge ultimately ruled:

> The objection is sustained as to Defense Exhibits A and B for identification. The court finds under [Mil. R. Evid.] 403 that the probative value is substantially outweighed by the danger of confusion of the issues, and unnecessary presentation of cumulative evidence.

Appellant claims the two exhibits were admissible in sentencing as extenuation, mitigation, and rebuttal. He asserts that the military judge erred by finding them cumulative and that the error prejudiced him during sentencing. We disagree.

### 2. Law

We review a military judge's decision to admit or exclude sentencing evidence for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Evidence is relevant if it has any tendency to make the existence of "a fact more probable or less probable than it would be without the evidence." Mil. R. Evid. 401(a). Irrelevant evidence is inadmissible. Mil. R. Evid. 402(b). Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . confusing the issues . . . or needlessly presenting cumulative evidence." Mil. R. Evid. 403. Where a military judge conducts a proper balancing test under Mil. R. Evid. 403, an appellate court will not overturn the ruling absent a clear abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010) (quoting *United States v. Ruppel*, 49 M.J. 247, 251 (C.A.A.F. 1998)).

### 3. Analysis

We find nothing clearly erroneous or clearly unreasonable in the military judge's ruling to exclude the two exhibits offered by the Defense. The military judge's ruling on the two exhibits was informed by his earlier Mil. R. Evid. 403

ruling excluding some of SSgt JR's testimony about TW acting out. Appellant does not challenge the exclusion of that testimony on appeal. The record of trial also reflects the military judge's queries of trial defense counsel on the purpose of the exhibits, their probative value, how they could cause confusion, and whether they may be cumulative. While the military judge's ruling was succinct, we find he properly articulated a Mil. R. Evid. 403 balancing test before finding the probative value of the two exhibits was substantially outweighed by the danger of confusion of the issues and the unnecessary presentation of cumulative evidence. We note the military judge issued a single ruling as the Defense offered both exhibits together. We find no clear abuse of discretion.

Defense Exhibit A for identification compared two disorders: oppositional defiant disorder and conduct disorder. The exhibit, which has no publication date, indicates permission to reprint it was granted on 18 June 2002. In addition to the two disorders listed in its title, the article also mentions that conduct disorder may be a component of childhood bipolar disorder. The article includes a caveat that research on this point is "now beginning" and this "further complicate[s] the process of making a diagnosis."

The Defense never introduced evidence to sufficiently connect any of the three disorders listed in the article to TW. We readily agree that admission of this article in the absence of an expert opinion or a formal diagnosis of TW would have confused the issues, even in a trial by military judge alone. This deficiency was apparent during cross-examination of SSgt JR, when the military judge asked trial defense counsel whether he was attempting "to elicit a bunch of symptoms" of TW and have the military judge essentially "make a diagnosis." We find the military judge properly excluded Defense Exhibit A for identification, wisely avoided an area ripe for confusion, and certainly did not clearly abuse his discretion.

Defense Exhibit B for identification provides information on child sexual behaviors for physicians to evaluate and manage behaviors. At the time the exhibit was offered, the military judge had already received evidence about TW's sexual behaviors with Appellant. For example, under oath, Appellant told the military judge that sometimes TW initiated sexual activities and sometimes Appellant initiated them. We find Defense Exhibit B for identification would have added nothing of consequence in extenuation, mitigation, or rebuttal evidence under R.C.M. 1001. The exhibit had limited probative value in Appellant's case. Appellant described sexual acts with TW when she was 15 years old. The exhibit does not address child behavior above the age of 13 years old. We find the military judge did not clearly abuse his discretion when he excluded this exhibit under Mil. R. Evid. 403 for cumulativeness and confusion of the issues.

**B. SJAR Errors**

**1. Additional Background**

Appellant requests meaningful sentence relief and claims his marital status and overseas service are inaccurately reflected on the personal data sheet (PDS) attached to the SJAR. Additionally, Appellant requests new post-trial processing because the addendum to the SJAR incorrectly stated that the Defense did not allege legal errors in its clemency submission, when the Defense actually alleged the military judge erred by not admitting Defense Exhibits A and B for identification.

**2. Law**

Proper completion of post-trial processing is a question of law this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citation omitted).

"Under regulations of the Secretary concerned, trial counsel may obtain and introduce from the personnel records of the accused evidence of the accused's marital status . . . and character of prior service." R.C.M. 1001(b)(2). "'Personnel records of the accused' includes any records made or maintained in accordance with departmental regulations that reflect the past military efficiency, conduct, performance, and history of the accused." *Id.* If an accused objects to a particular document as inaccurate or incomplete in a specific respect, the matter shall be determined by the military judge. *Id.*

"Failure to timely comment on matters in the SJAR, or matters attached to the recommendation, forfeits any later claim of error in the absence of plain error." *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (en banc) (citing R.C.M. 1106(f)(6); *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005)). To prevail under a plain error analysis, an appellant must show "(1) there was an error; (2) [the error] was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (quoting *Scalo*, 60 M.J. at 436). The threshold for establishing prejudice from errors impacting an appellant's request for clemency from the convening authority is low, even in the context of plain error analysis, but there must be "some 'colorable showing of possible prejudice.'" *Id.* (quoting *Scalo*, 60 M.J. at 437).

**3. Analysis**

*a. Marital Status*

The PDS admitted at trial and attached to the SJAR listed Appellant's marital status as "Married." Appellant invites us to look to the record of trial to determine that he was actually divorced. We need not detail the various conflicting references in the record of trial about Appellant's marital status. What

matters is what is reflected in his service record. The PDS is simply not designed to be a summary of what witnesses testified to during trial.

Under the plain error test, Appellant bears the burden of showing the PDS incorrectly listed his marital status. He failed to meet his burden. Appellant provided no documentation from his service record to show when his marital status may have changed to divorced. In the absence of such evidence, we decline to speculate that his service record showed he was divorced. Even if we assume *arguendo* that Appellant's service record did show he was divorced, we would not find a colorable showing of possible prejudice from such an error in Appellant's case. *See Scalo*, 60 M.J. at 437.

### b. Overseas Service

The PDS admitted at trial and attached to the SJAR listed Appellant's "overseas service (OCONUS)" as "N/A". The PDS included Appellant's combat service as "October 2013-February 2014 Ali Al Salem, Kuwait." During trial, the Defense initially objected to the accuracy of the PDS but later withdrew its objection. As Appellant did not object to the accuracy of his overseas service on the PDS in his clemency submission, we review for plain error.

"Overseas service (OCONUS)" on a PDS identifies "service for which credit for overseas service was awarded per AFI 36–2110." Air Force Instruction 51–201, *Administration of Military Justice*, Figure 3.7 n. 3 (6 Jun. 2013, as amended by AFGM 2016–01, 3 Aug. 2016). Appellant asserts that credit for OCONUS service can extend to temporary duty and not merely a permanent change of station. *See* Air Force Instruction (AFI) 36–2110, *Assignments*, ¶ 3.4, Table 3.4 (22 Sep. 2009). Appellant also cites to *United States v. Parker*, 73 M.J. 914, 921 (A.F. Ct. Crim. App. 2014), for the proposition that "where a summary of the accused's service record is prepared, that summary must be accurate." The Government does not concede the PDS erroneously stated Appellant's overseas service but instead assumes *arguendo* that Appellant is correct and argues that he suffered no material prejudice.

There may be a future case that requires us to resolve when an overseas deployment also receives "credit for overseas service." Such a case could determine whether AFI 51–201, Figure 3.7, note 3, seeks to capture an adjustment to an Overseas Duty Selection Date and Short Tour Return Date as "a credit" or whether it only aims to include a credit that results in a completed overseas short or long tour. Appellant's case does not require that determination as we agree with the Government that Appellant suffered no material prejudice from the alleged error. Appellant's deployment to Kuwait was listed as combat service on the PDS that the convening authority considered before taking action. Appellant has not attempted to show that he would have received a favorable recommendation by the SJA or corrective action by the convening authority

without the purported error. Considering the above facts, we find no colorable showing of possible prejudice from any failure to mention that a six-month deployment to Kuwait may have also qualified Appellant for overseas service. *See Scalo*, 60 M.J. at 437.

### c. Allegation of Legal Error

There is no question the addendum to the SJAR erroneously stated "[t]he defense does not allege any legal error in this case." The clemency submission made clear the Defense believed the military judge "erroneously excluded from evidence" two exhibits, Defense Exhibits A and B for identification. There is also no question that the convening authority denied Appellant's requested relief in clemency to reduce his forfeiture of all pay and allowances to forfeiture of $1,168 pay per month for 40 months.[6]

Citing to *United States v. Hill*, 27 M.J. 293, 296 (C.M.A. 1988), Appellant avers the Government has failed to establish that a remand for new post-trial processing is not necessary as "in most instances failure of the [SJA] . . . to prepare a recommendation with contents required by R.C.M. 1106(d) will be prejudicial."

Since *Hill* was decided, the United States Court of Appeals for the Armed Forces further explained the convening authority's role relative to defense claims of legal error as "less pivotal to an accused's ultimate interests." *United States v. Hamilton*, 47 M.J. 32, 35 (C.A.A.F. 1997). Defective advice by an SJA about a claim of legal error that leads a convening authority to not provide relief can be corrected through appellate litigation of the claimed error. *Id.* at 35–36. Accordingly, it is appropriate for an appellate court to look for any prejudice that may have "flowed from misadvice as to a defense claim of legal error." *Id.* at 36 (citation omitted). An appellate finding that those alleged errors have no merit precludes a finding that the SJA's advice prejudiced the appellant. *Id.*

While the Government requested and we granted a motion to attach affidavits from the convening authority and the SJA, we need not use them to resolve this issue. Instead, as we found the military judge did not clearly abuse his discretion in excluding Defense Exhibits A and B for identification, we are precluded from finding the omission of the legal error allegation in the SJAR addendum prejudiced Appellant. *See id.*

---

[6] Appellant acknowledged in his clemency matters that, for his request to have actual meaning, the law regarding mandatory forfeitures would have to change.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c) (2016). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court